THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:12-cv-00042-MR-DLH

| | |
|---|---|
| LLOYD STEVEN KISER, ) ) Plaintiff, ) ) vs. ) ) ) TRACTOR SUPPLY COMPANY, a ) Delaware Corporation, and "JOHN ) DOE," a person or business whose ) identification is unknown to Plaintiff ) at this time, ) ) Defendants. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 16].

**I. PROCEDURAL BACKGROUND**

The Plaintiff Lloyd Steven Kiser initiated this products liability action on January 27, 2012, in the Cleveland County General Court of Justice, Superior Court Division, against the seller of the allegedly defective product, Tractor Supply Company ("Tractor Supply"), and the manufacturer of the allegedly defective product, identified in the Complaint only as "John

Doe." [Complaint, Doc. 1-1 at 3]. On March 3, 2012, Tractor Supply removed the action to this Court on the basis of diversity jurisdiction. [Notice of Removal, Doc. 1]. Tractor Supply filed its Answer on March 8, 2012. [Doc. 3].

On October 15, 2012, the Plaintiff filed a Motion to Amend his Complaint in order to substitute Behrens Manufacturing LLC as the "John Doe" Defendant. On October 17, 2012, Magistrate Judge Howell granted the Plaintiff's Motion and gave him until October 24, 2012 to file an Amended Complaint. [Doc. 14]. The Plaintiff, however, did not file an Amended Complaint within the time required.

On December 31, 2012, in keeping with the deadlines set forth in the Pretrial Order and Case Management Plan [Doc. 6], Tractor Supply filed its Motion for Summary Judgment. [Doc. 16]. Thereafter, on January 3, 2013, the Plaintiff filed an Amended Complaint. [Doc. 18]. Tractor Supply immediately moved to strike the Amended Complaint. [Doc. 19]. On January 16, 2013, Judge Howell granted that motion. [Doc. 22]. The Plaintiff moved for reconsideration of Judge Howell's Order, which was denied. [Docs. 23, 24]. The Plaintiff never filed a response to Tractor Supply's Motion for Summary Judgment.

2

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and must draw all reasonable

inferences in the nonmoving party's favor. <u>Adams v. Trustees of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 556 (4th Cir. 2011). Where the non-moving party has not responded to the motion, however, the Court may consider the forecast of evidence presented by the movant to be undisputed for the purposes of the present motion. <u>See</u> Fed. R. Civ. P. 56(e)(2).

## III. FACTUAL BACKGROUND

In light of the Plaintiff's failure to respond to the Defendant's Motion, the following forecast of evidence is not in dispute.

At some point in early January 2009, the Plaintiff purchased a galvanized metal bucket from Tractor Supply. [Complaint, Doc. 1-1 at ¶4]. On or about January 29, 2009, the Plaintiff was using the bucket to transport (or "pull") hot grease from a stove while working at a restaurant called the Shelby Fish Camp. [<u>Id.</u> at ¶5]. The Plaintiff estimated the temperature of the grease to be either 325 or 375 degrees. [<u>See</u> Complaint, Doc. 1-1 at ¶4; Deposition of Lloyd Kiser ("Pl. Dep."), Doc. 16-1 at 44]. As he was transporting the grease, the bottom of the bucket collapsed causing the grease to fall onto the Plaintiff's lower legs and injure him. [Complaint, Doc. 1-1 at ¶5].

4

Plaintiff testified that these buckets were periodically purchased from Tractor Supply for the restaurant every three or four months. [Pl. Dep., Doc. 16-1 at 34]. Plaintiff admitted that when he purchased buckets from the Defendant, he only sought a metal bucket, and not a particular brand. [Id. at 36]. Plaintiff further admitted that he was aware these buckets would begin to fail and "seep" grease out of the bottom of the bucket and onto the floor after a few months of use, at which point the restaurant would discard the old bucket and purchase a new one. [Id. at 35].

While the Plaintiff alleges in his verified Complaint that he purchased the bucket at issue in this case [Complaint, Doc. 1-1 at ¶4], the Plaintiff testified in his deposition that he was not sure whether he or his brother, Scott Eugene Kiser, purchased it. [Id. at 40]. The Plaintiff testified that both he and his brother purchased a bucket from Tractor Supply around the same time period. [Id.].

The Plaintiff could not recall whether he discussed these buckets with Tractor Supply employees when he purchased them. [Id. at 43]. Further, while the Plaintiff claims that unknown and unidentified employees of Tractor Supply knew that the buckets were being used at the restaurant, he could not recall whether he ever told these employees that he was using the buckets for "pulling" or transferring the hot grease. [Id. at 43-44].

When the Plaintiff purchased a bucket (which may or may not have been the bucket at issue) from Tractor Supply a few weeks prior to his accident, he examined it and did not see any problems or defects. [Id. at 53-54].

Plaintiff does not know why the bucket collapsed. [Id. at 57]. Plaintiff is further unaware of any government or industry standards that were violated by the Defendant regarding the sale of the bucket. [Plaintiff's Response to Interrogatory No. 4, Doc. 16-5 at 2-3]. Even after the Plaintiff was injured by the alleged failure of the bucket, he continued to purchase the same type of buckets from Tractor Supply for transporting hot grease from the restaurant's stoves. [Pl. Dep., Doc. 16-1 at 77].

The Plaintiff's brother, Scott Kiser, testified that when he purchased his bucket from Tractor Supply a few weeks before the Plaintiff's incident, he inspected it by holding it up to the light and noted that "everything looked great." [Deposition of Scott Kiser ("S. Kiser Dep."), Doc. 16-2 at 24]. Scott Kiser also confirmed that no Tractor Supply employees ever made representations to him about the buckets that he purchased from the store. [Id. at 19]. While Scott Kiser testified that one Tractor Supply employee named Kim Hamrick generally "knew" that he purchased these buckets to clean the restaurant's stoves, he admitted that he never told her *how* the

6

bucket was used to clean the stove, or that 375 degree grease was being placed in the bucket for transport. [Id. at 19-20]. More importantly, Scott Kiser admitted that after being told that the bucket would be used to "clean the stove," Kim Hamrick did not make any representations about the adequacy of the bucket for that purpose. [Id.]. Lastly, Scott Kiser admitted that at the time of this specific bucket purchase three weeks prior to the Plaintiff's incident, he did not have any such conversations with Kim Hamrick. [Id. at 20].

Like the Plaintiff, Scott Kiser also testified that the hot grease would start to "seep" out of the bottom of the buckets they purchased from Tractor Supply after less than three months of use. [Id. at 14]. Even after his brother's incident, Scott Kiser continued to purchase these same buckets from Tractor Supply for transporting hot grease. [Id. at 26].

## IV. DISCUSSION

### A. Tractor Supply's Motion for Summary Judgment

At the outset, the Court notes that the specific causes of action asserted by the Plaintiff against Tractor Supply are not entirely clear. It appears, however, that the Plaintiff has alleged claims of breach of implied warranty (for both merchantability and fitness for a particular purpose), breach of express warranty, and product liability/negligence pursuant to

7

N.C. Gen. Stat. § 99B. For the reasons that follow, the Court concludes that Tractor Supply is entitled to summary judgment on each of these claims.

### 1. Plaintiff's Claims for Implied Warranty of Merchantability and Negligence/Product Liability

In order to bring a products liability claim based either on negligence or a breach of implied warranty of merchantability, a plaintiff must prove that the product was defective when it left the defendant's control. See DeWitt v. Eveready Battery Co., 355 N.C. 672, 683, 565 S.E.2d 140, 147 (2002) ("To establish a breach of implied warranty of merchantability under the statute, a plaintiff must prove the following elements: (1) that the goods bought and sold were subject to an implied warranty of merchantability; (2) that the goods did not comply with the warranty in that the goods were defective at the time of sale; (3) that his injury was due to the defective nature of the goods; and (4) that damages were suffered as a result.") (internal quotation marks omitted); Red Hill Hosiery Mill, Inc. v. MagneTek, Inc., 138 N.C. App. 70, 75, 530 S.E.2d 321, 326, disc. rev. denied, 353 N.C. 268, 546 S.E.2d 112 (2000) ("A products liability claim grounded in negligence requires the plaintiff prove (1) the product was defective at the time it left the control of

the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage.") (footnote omitted).

In the present case, the Plaintiff has not identified any specific defect in the bucket at issue. The Plaintiff himself testified that he does not know why the bucket failed. He has not identified any obvious defect with the product, nor has he produced any expert witness to identify any latent defect therein. Thus, the Plaintiff has presented no forecast of evidence tending to show that the bucket was defective when it left the control of Tractor Supply. Even assuming that the forecast of evidence could support a finding of a defect, there is no forecast of evidence before the Court to show that the bucket was sold under circumstances in which Tractor Supply had an opportunity to inspect the bucket in a manner that would have revealed, or should have revealed, the manner in which the bucket was allegedly defective. See N.C. Gen. Stat. § 99B-2 ("No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller . . . when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of ...."). Accordingly, the

Plaintiff's product liability claims based on a breach of implied warranty of merchantability and negligence are dismissed.

### 2. Plaintiff's Claim for Breach of Implied Warranty of Fitness for Particular Purpose

In order to bring a products liability claim based on a breach of the implied warranty of fitness for a particular purpose, a plaintiff must show that "the seller at the time of contracting ha[d] reason to know [of] any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods[.]" N.C. Gen. Stat. § 25-2-315. Here, the undisputed forecast of evidence establishes that Tractor Supply had no reason to know that the Plaintiff and his brother were using the metal buckets to transport hot grease. At most, one Tractor Supply employee was informed that the buckets were being used to clean out the stoves at the restaurant. It is undisputed, however, that neither the Plaintiff nor his brother ever advised anyone at Tractor Supply as to how the buckets were being used in the cleaning process. Further, there is no forecast of evidence that the Plaintiff or his brother relied on the skill of judgment of any Tractor Supply employees in selecting the bucket at issue. Accordingly, the Plaintiff's products liability claim

based on a breach of the implied warranty of fitness for a particular purpose is hereby dismissed.

### 3. Plaintiff's Express Warranty Claim

To establish an express warranty by a seller, a plaintiff must show either: 1) that there was an affirmation of fact or promise made by the seller to the buyer relating to the goods which becomes part of the basis of the bargain; 2) that a description of the goods was given which is made part as part of the basis of the bargain; or 3) that a sample or model was given which is part of the basis of the bargain. See N.C. Gen. Stat. § 25-2-313.

In the present case, the Plaintiff has not presented any forecast of evidence that any of those three factual scenarios occurred with the purchase of the bucket from Tractor Supply. When asked whether he ever discussed the buckets with Tractor Supply employees when he purchased them, the Plaintiff testified, "Maybe. I don't know." [Pl. Dep., Doc. 16-1 at 43]. Similarly, Scott Kiser confirmed that no one from Tractor Supply ever said anything about the buckets when he purchased them. There has been no forecast of evidence presented to establish that any representations were made by Tractor Supply employees when the subject bucket was purchased, or that any sample or model was given as a basis of the bargain. Accordingly, there is no forecast of evidence in the record to

11

support the Plaintiff's express warranty claim against Tractor Supply, and it will therefore be dismissed.

### 4. Plaintiff's Claim for Inadequate Warning

A retail seller's duty to warn, with respect to products manufactured by another, arises only when two circumstances simultaneously exist: 1) the seller "has actual or constructive knowledge of a particular threatening characteristic of the product" and 2) the seller "has reason to know that the purchaser will not realize the product's menacing propensities for himself." Ziglar v. E.I. DuPont De Nemours and Co., 53 N.C. App. 147, 151, 280 S.E.2d 510, 513 (1981).

Neither circumstance is present in this case. There has been no forecast of evidence to show that Tractor Supply knew or should have known of a dangerous characteristic with the bucket (nor any evidence that a dangerous characteristic even existed). Additionally, there is no forecast of evidence that Tractor Supply had any reason to know that either the Plaintiff, or Scott Kiser, would fail to realize the dangers in using the bucket to transport hot grease. By contrast, the Plaintiff's knowledge that the every bucket eventually "seeped" and leaked at some point suggests that the Plaintiff actually *did* know of that danger. The Plaintiff's claim for inadequate warning is therefore dismissed.

### 5. Plaintiff's Claim for Inadequate Design or Manufacture

To the extent that the Complaint could be construed as asserting claims against Tractor Supply for inadequate design or formulation of the subject bucket, that claim is subject to summary dismissal simply because there is no forecast of evidence to show that Tractor Supply manufactured or designed the bucket at issue. Without any evidence that Tractor Supply played a role in the design or manufacture of the subject bucket, no claim for negligent design or manufacture can be made against it. See N.C. Gen. Stat. § 99B-6 (referencing claims based on inadequate design or formulation against the *manufacturer* of the product). Accordingly, any claims for inadequate design or manufacture asserted against Tractor Supply are hereby dismissed.

### B. Dismissal of "John Doe" Defendant

The Plaintiff did not identify and serve the Defendant "John Doe" within 120 days after filing his Complaint as required by Rule 4(m) of the Federal Rules of Civil Procedure, nor has he sought additional time to serve this unnamed Defendant. Accordingly, the Defendant "John Doe" is hereby dismissed from this action without prejudice.

## V.    ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant Tractor Supply Company's Motion for Summary Judgment [Doc. 16] is **GRANTED**, and all of the Plaintiff's claims against this Defendant are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Defendant "John Doe" is hereby **DISMISSED WITHOUT PREJUDICE**.

A Judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: April 15, 2013

Martin Reidinger
United States District Judge